**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| DONGHO KANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:25-cv-00015-TWP-KMB |
| | ) |
| POSCO AAPC LLC, | ) |
| ICN GROUP, | ) |
| J-1 VISA EXCHANGES, INC., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on Motions to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants ICN Group (Dkt. 16), and POSCO AAPC LLC ("POSCO") (Dkt. 17); and pursuant to 12(b)(2) and 12(b)(6) by Defendant J-1 Visa Exchanges, Inc. ("J1X") (Dkt. 24). *Pro se* Plaintiff Dongho Kang ("Kang"), a South Korean national, participated in a J-1 visa internship program in Indiana hosted by POSCO. ICN Group arranged the internship, and J1X sponsored Kang's visa. Kang initiated this action after his termination from POSCO. For the following reasons, the Court **grants in part** and **denies in part** POSCO's Motion, **denies** ICN Group's Motion, **grants** J1X's Motion, and **grants Kang leave** to file an amended complaint.

### I.    BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Kang as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

In 2023, Kang was offered a specialized internship with POSCO through ICN Group (Dkt. 1 at 11). He participated in interviews and received an offer letter outlining a one-year contract with POSCO, which included medical benefits and the potential for full-time employment at the end of one year, based on his performance. *Id.* Kang also contracted with ICN Group and J1X. *Id.* at 11, 13. All parties signed a DS-7002 form that outlined Kang's expected work. Unfortunately for Kang, when he started at POSCO, "the actual work significantly deviated from the DS-7002," and instead of working on steel production research, Kang was assigned "safety, environmental, and maintenance tasks." *Id.* at 11. Kang documented these discrepancies and notified POSCO, ICN Group, and J1X. In response, Kang received a "warning email" from J1X and ICN Group stating that if he did not work according to the DS-7002, his internship would be terminated. *Id.* at 14.

The next month, Kang was "coerced into signing a job description reflecting the actual work performed, under threat of internship termination." *Id.* at 11. Kang also alleges that "[u]nlike interns of other nationalities who were assigned tasks related to DS7002," he was assigned "menial tasks unrelated to his background." *Id.* at 12. He also heard supervisors "making derogatory comments about individuals of Korean descent," and had a supervisor ask him, "Are you going home?" *Id.* at 10, 14. Kang was then "given additional heavy workloads and unpleasant tasks" and, after a verbal altercation with a supervisor, "wrongfully terminated for alleged 'disrespectful attitude towards management.'" *Id.*

Kang filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Right to Sue letter before initiating this federal lawsuit (Dkt. 1-1; Dkt. 1-2). He initiated this lawsuit on January 25, 2025, by filing a fill-in-the-blank Complaint form, in which he checked the boxes for employment discrimination based upon Title VII of the Civil Rights Act of 1964 and 22 C.F.R. §§ 62.22 *et seq.* for "termination of my

2

employment," "retaliation," and "other acts" on the basis of his race and national origin, South Korean (Dkt. 1 at 2, 4–5). In attached pages, Kang asserts several claims against each Defendant. Against POSCO, Kang alleges breach of contract, hostile work environment and wrongful termination, breach of the implied covenant of good faith and fair dealing, and fraudulent inducement. *Id.* at 9–11. Against ICN Group , he alleges breach of contract, misrepresentation, and attempted obstruction of litigation. *Id.* at 8. And against J1X, Kang alleges various violations of Title 22 of the Code of Federal Regulations ("CFR") as well as state law negligence. *Id.* at 8–9.

In the Entry of June 5, 2025, the Complaint was screened pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court dismissed Kang's obstruction of litigation claim against ICN Group, but all of Kang's other claims proceeded (Dkt. 9). All three Defendants have since appeared and moved to dismiss the Complaint. Kang has not responded to the Motions to Dismiss, and the time to do so has passed. The Motions are therefore ripe for the Court's review.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not

3

required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation modified). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**B.**     **Motion to Dismiss under Rule 12(b)(2)**

Federal Rule of Civil Procedure Rule 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When deciding a Rule 12(b)(2) motion, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff if they weigh on personal jurisdiction. *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n*, 149 F. Supp. 2d 615, 623 (S.D. Ind. 2001). But if the complaint consists of conclusory allegations unsupported by factual allegations, the complaint fails the liberal standard of Rule 12(b). *Id.* The complaint does not need to include factual allegations concerning personal jurisdiction, but if the defendant moves to dismiss under Rule 12(b)(2), the plaintiff "bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

The extent of a plaintiff's burden depends upon the method by which the court determines the issue of personal jurisdiction. *Id.* "When the . . . court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence." *Id.* But where, as here, the court determines personal jurisdiction based only on reference to submissions

of written materials, the plaintiff simply needs to make a prima facie case of personal jurisdiction. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

In determining whether the plaintiff has met the prima facie standard, the plaintiff is entitled to a favorable resolution of all disputed relevant facts. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). However, if the defendant has submitted evidence in opposition to the implementation of jurisdiction, then "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 782–83. The evidence submitted by the defendant may include affidavits, unless the affidavits merely contain conclusory assertions that the court lacks personal jurisdiction over the defendant. *Id.* at 783.

### III.   <u>DISCUSSION</u>

#### A.   <u>POSCO's Motion to Dismiss</u>

Kang asserts several claims against POSCO: national origin discrimination (hostile work environment) and retaliation under Title VII; breach of contract; breach of the implied covenant of good faith and fair dealing; and fraudulent inducement (Dkt. 1 at 9–10). POSCO moves to dismiss each claim for different reasons which the Court will address in turn.

#### 1.  <u>Title VII Claims</u>

POSCO argues that Kang's Title VII claims should be dismissed because Kang did not administratively exhaust many of his Title VII allegations by including them in his EEOC Charge, and because he fails to adequately state a Title VII claim upon which relief may be granted.

"In Title VII cases, the scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099–1100 (7th Cir. 2013). To be "like or reasonably related to an administrative charge, the relevant claim and the administrative charge

must, at minimum, describe the same conduct and implicate the same individuals." *Id.* (cleaned up). POSCO argues that Kang's EEOC Charge alleges harassment but "no nexus to national origin," and that it alleges retaliation but not "that he was retaliated against for engaging in protected conduct." (Dkt. 18 at 4–5 (emphasis in original)). Therefore, POSCO contends, Kang cannot rely on the allegations in his Complaint that are related to national origin harassment or protected conduct. *Id.* at 5.

POSCO reads Kang's EEOC Charge too narrowly. The Charge plainly alleges "DISCRIMINATION BASED ON: NATIONAL ORIGIN, RETALIATION." (Dkt. 1-2 at 1). The Charge identifies a few specific instances of harassment—including a manager asking him "if [he] wanted to be sent home"—and retaliation. The Charge then concludes: "I believe that I was terminated in retaliation for complaining about manager harassment and due to my national origin." *Id.* These assertions provided enough specificity to give POSCO a sufficient basis to investigate, and Kang's claims in this lawsuit can "reasonably be expected to grow out of the administrative charges." *Reynolds*, 737 F.3d at 1100.

Aside from its exhaustion argument, POSCO argues that Kang fails to adequately state a Title VII retaliation claim. However, this argument is based solely on Kang's so-called "exhausted allegations" rather than all of the allegations in his Complaint (Dkt. 18 at 9). Because the Court has found that Kang has exhausted his administrative remedies as to all of the Title VII allegations in the Complaint, POSCO's argument as to the retaliation claim fails.

POSCO further argues that Kang fails to state a hostile work environment claim for two reasons (Dkt. 18 at 6–7). First, the Complaint's "exhausted" allegations fail to show that the alleged harassment was based on Kang's national origin. Again, because the Court considers *all* allegations in the Complaint, Kang has adequately alleged harassment on the basis of his national origin.

Second, POSCO argues that even when considering the entire Complaint, Kang fails to describe harassment that was sufficiently severe or pervasive. Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation modified). In determining whether harassing conduct was severe or pervasive, "[t]he key inquiry is whether the conduct was so severe or pervasive that it altered the conditions of the employment relationship." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014). In this regard, courts look to the "totality of the circumstances." *Id.* Because this element is fact-intensive, it is not always well-suited for resolution on a motion to dismiss. *Huri v. Office of Chief Judge of Circuit Court of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015) ("The pleading standards in Title VII cases are, of course, different from the evidentiary burden a plaintiff must subsequently meet."). The Complaint certainly describes harassing conduct, and "it is premature at the pleadings stage to conclude just how abusive [Kang's] work environment was." *Id.* at 834. It is enough to say that it is plausible that the profanity, threats of "going home," "excessive" and "unpleasant" workload, "derogatory comments about individuals of Korean dissent" (Dkt. 1 at 10–12), and "uniquely bad treatment of [Kang] could plausibly be abusive." *Huri*, 804 F.3d at 834 (reversing district court's dismissal of hostile work environment claim at pleadings stage).

POSCO's Motion to Dismiss Kang's Title VII claims is **denied**.

### 2.  **Breach of Contract**

Kang alleges breach of contract against POSCO based on the medical benefits and full-time employment provisions of his Offer Letter and based on the DS-7002 form.

### a. **<u>POSCO Offer Letter</u>**

POSCO argues that the Offer Letter's terms are too indefinite and vague to form an enforceable contract (Dkt. 18 at 10; Dkt. 1-9 (Offer Letter)). For a contract to be enforceable, it "must be complete in its essential and material terms, and capable of being enforced without adding to its terms." *Wolvos v. Meyer*, 668 N.E.2d 671, 678 (Ind. 1996); *see Firestone v. Std. Mgmt. Corp.*, No. 04-CV-1223, 2005 WL 1606955, at *12 (S.D. Ind. July 5, 2005) ("[I]t is a fundamental tenet of contract law that 'a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained'") (quoting *Ewing v. Bd. of Trs. of Pulaski Mem. Hosp.*, 486 N.E.2d 1094, 1098 (Ind. Ct. App. 1985)). The Offer Letter lists several material terms regarding Kang's position, including his minimum employment period (12 months) and base wages ($18 per hour). The Offer Letter includes lines for the signatures of both a POSCO representative and Kang.

POSCO points out that the Offer Letter states that Kang was only "eligible" for medical benefits, does not provide "detail" or "specific criteria" for the medical benefits, and only provides that Kang "may" be eligible for full-time employment beyond one year "based on performance." (Dkt. 18 at 12; Dkt. 1-9). However, the Court cannot determine at this preliminary stage that the term "eligible" makes the Offer Letter too vague to be enforceable, particularly where the specific medical benefits are listed alongside expenses that POSCO "will" reimburse (Dkt. 1-9). *Contrast* (Dkt. 1-9 ("[A]s a full time intern, you are eligible for all applicable benefits listed.")); *with Sickle-Santanello v. Ohio Health Corp.*, No. 10 CVH-11-17393, 2013 Ohio Misc. LEXIS 9345 (Ohio Ct. Common Pleas Aug. 19, 2013) (granting summary judgment for breach of contract claim based on offer letter provision stating plaintiff "will be eligible to participate" in bonus program) *and Leschak v. Raiseworks, LLC*, No. 14cv8072, 2016 U.S. Dist. LEXIS 31785, at *14–16 (S.D.N.Y. Mar. 7, 2016) (same)). The Court likewise cannot say at this stage, when drawing all reasonable inferences in Kang's favor, that the Offer Letter's provision on consideration for full-time

employment is unenforceable as a matter of law. *See Est. of Eiteljorg ex rel. Eiteljorg v. Eiteljorg*, 813 F.Supp.2d 1069, 1080–81 (S.D. Ind. 2011) (stating that when a contract's language is ambiguous, a court "cannot properly determine [its meaning] on a motion to dismiss").

A contract need not be written in lengthy prose to be enforceable, and at the motion to dismiss stage, the Court cannot conclude as a matter of law that the Offer Letter is not a contract. *See Tesler v. Miller/Howard Investments, Inc.*, No. 1:16-cv-00640-TWP-MPB, 2017 WL 2840839, at *5 (S.D. Ind. July 3, 2017) (denying motion to dismiss breach of contract claim based on employment "Terms and Compensation" document); *McVay v. Store House Co.*, No. 16-cv-644, 2016 WL 9461331, at *3 (S.D. Ind. Oct. 24, 2016) ("Whether the Amendment constitutes a valid contract is not to be decided at the motion to dismiss stage of the litigation. A motion to dismiss must be decided on the allegations of the complaint, and the Amended Complaint here alleges the Amendment is a valid contract." (footnote omitted)).

POSCO also asserts that the Complaint does not adequately allege breach (Dkt. 18 at 13). The Complaint alleges that POSCO breached the Offer Letter by altering the "Medicare provision . . . to provide benefits only after deducting a portion of the insurance premium" and by failing to "properly implement[]" the provision regarding consideration for a full-time position (Dkt. 1 at 9). POSCO argues that Kang was only "eligible" for medical benefits, so it could not have breached the Offer Letter by failing to provide all benefits as Kang expected (Dkt. 18 at 13). As explained above, at this stage of the proceedings, the Court cannot hold the Offer Letter's benefits provision to be unenforceable, nor can it hold that POSCO did not breach the Offer Letter by failing to provide those benefits. POSCO raises a similar argument as to the provision regarding consideration for full time employment—because Kang was only "eligible" for a full-time position, POSCO could not have breached the Offer Letter by failing to offer him a full-time

position. *Id.* at 14. But Kang alleges that POSCO failed to properly "implement[]" this provision by wrongfully terminating him within the year. When construing the Complaint liberally and drawing all reasonable inferences in Kang's favor, the Court finds that Kang has adequately alleged POSCO's breach of the Offer Letter.

The Court **denies** POSCO's breach of contract claims based on the Offer Letter.

### b. DS-7002 form

POSCO next moves for dismissal of Kang's breach of contract claims based on the DS-7002 (Dkt. 18 at 14–15). POSCO argues that visa-related documents do not form enforceable contracts between plaintiff-employees and defendant-employers. This argument is well-supported by authority, and the Court agrees. *See Rao v. Covansys Corp.*, No. 06 C 5451, 2007 WL 3232492, at *3–4 (N.D. Ill. Nov. 1, 2007) (noting the "problematic nature of treating applications for discretionary grants of immigration status or approvals thereof as contracts," and explaining that H 1-B visa application did not form a contract because the party's only agreed "to do or refrain from doing something that it is already legally obligated to do or refrain from"); *Panwar v. Access Therapies, Inc.*, 975 F. Supp. 2d 948, 959 n.1 (S.D. Ind. 2013) ("The Court notes that [plaintiff's] breach of contract claim can only be based upon the Employment Agreement, not the terms of the [H 1-B] Application. The Application is an agreement between the employer and the Department of Labor; it is not contractual in nature between the employee and the employer."). The Court therefore **grants** the Motion to Dismiss Kang's breach of contract claim based on the DS-7002.

### 3. Breach of Implied Duty of Good Faith and Fair Dealing

POSCO moves to dismiss Kang's claim for breach of the implied covenant of good faith and fair dealing because Kang has failed to identify a valid contract and, in the employment context, Indiana law does not recognize this type of claim as an independent cause of action separate from breach of contract (Dkt. 18 at 16). This position is well supported by relevant

10

caselaw. *See, e.g.*, *Ray Skillman Oldsmobile & GMC Truck, Inc. v. Gen. Motors Corp.*, No. 05-cv-204, 2006 WL 694561, at *6 (S.D. Ind. Mar. 14, 2006). Kang's breach of implied covenant claim is duplicative of his breach of contract claim, so POSCO's Motion to Dismiss that claim is **granted**.

### 4.   Fraudulent Inducement

POSCO lastly moves to dismiss Kang's fraudulent inducement claim (Dkt. 18 at 17). POSCO contends, in part, that this claim arises from false representations of future conduct, which cannot form the basis of a fraud claim under Indiana law. *Id.* This argument is also well supported, and the Court agrees. *See, e.g.*, *Urbanski v. Tech Data*, No. 07cv017, 2008 WL 141574, at *2 (N.D. Ind. Jan. 11, 2008) (granting motion to dismiss fraud claims based on employer's allegedly false promise to make plaintiff a permanent employee after two months); *see also Ballard v. Allstate Ins. Co.*, No. 12-cv-1666, 2013 WL 3177705, at *2 (S.D. Ind. June 24, 2013) (citing cases stating that fraud claims cannot be premised on promises to perform future actions). For that reason, the Court **grants** the Motion to Dismiss Kang's fraudulent inducement claim against POSCO.

### B.   ICN Group's Motion to Dismiss

Kang's Complaint alleges breach of contract, misrepresentation, and attempted obstruction of litigation against ICN Group. The obstruction claim was dismissed without prejudice on screening, leaving only the breach of contract and misrepresentation claims. ICN Group now moves to dismiss those claims because: (1) Kang fails to state a claim for breach of contract; (2) the claims against ICN Group should be dismissed on the basis of forum non conveniens; and (3) Kang fails to plead his misrepresentation claim with adequate specificity (Dkt. 16).

### 1.   Breach of Contract Claim

ICN Group first argues that "it had no contractual relationship with Plaintiff" and that "Plaintiff has not pleaded the existence of any written or implied-in-fact contract between himself and ICN." *Id.* at 3–4. The Court disagrees. Kang's Complaint plainly alleges a contract between

himself and ICN Group (Dkt. 1 at 8 (alleging "breach of verbal contract" and "breach of . . . the contract with ICN Group"); *id.* at 11 –13 ("I then contracted with ICN Group . . . . September 15, 2023: Signed a contract with ICN Group."). Kang even attaches alleged contract documents (Dkt. 1-3; Dkt. 1-7).

ICN Group disputes that it was a party to any legal contract with Kang and offers an affidavit regarding Kang and its relationship. However, at this stage the Court must accept Kang's allegations as true and may not consider evidence outside the pleadings. *See Bielanski*, 550 F.3d at 633. Moreover, *pro se* complaints are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Kang's breach of contract claim survives the pleadings stage. Whether ICN Group in fact entered into a contract with Kang or breached any contract must be addressed at summary judgment or trial.

ICN Group next argues that it "cannot be held liable for harm caused by conduct it did not control—namely, POSCO's alleged misconduct during Plaintiff's internship." (Dkt. 16 at 5). However, Kang's claims against ICN Group are based on ICN Group's own alleged actions— namely, ICN Group's breach of its contracts with Kang and ICN Group's own misrepresentations and omissions prior to Kang's internship at POSCO (Dkt. 1 at 8, 11–12). Kang does not base his claims against ICN Group on conduct "solely attributable to POSCO," so dismissal is not appropriate on that basis (Dkt. 16 at 5).

### 2. Forum Non Conveniens

ICN Group also moves for dismissal on the basis of forum non conveniens. The doctrine of forum non conveniens gives trial courts discretion to dismiss a case "when it determines that there are strong reasons for believing it should be litigated in the courts of another, normally a foreign, jurisdiction." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) (citation modified).

12

The doctrine should be used "sparingly," as a dismissal on forum non conveniens grounds is an exceptional remedy. *Id.* at 805.

> The Seventh Circuit has explained:
>
> [U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. The exceptional nature of a dismissal for forum non conveniens means that a defendant invoking it ordinarily bears a heavy burden in opposing the plaintiff's chosen forum. A heavy burden is appropriate, because if the doctrine is successfully invoked, the result is not a transfer to another court but a dismissal, and the plaintiff will not be able to refile his case in any other court if the statute of limitations has run.

*Id.* at 805–06. Where a plaintiff chooses a forum that is not his home, the presumption applies with less force. *See id.* at 806. But it "is still the defendants' burden to oppose the chosen forum." *Id.*

The forum non conveniens inquiry involves two steps. "[A] court first must determine if an alternative and adequate forum is available and then go on to balance the interests of the various participants." *Id.* at 807. ICN Group does not address either of these steps in its Motion. Instead, it simply argues that Kang previously brought a case in New York based on similar facts and Kang should not be permitted to re-litigate his claims in Indiana (Dkt. 16 at 3). However, ICN Group provides almost no information about this prior case. All that it states is:

> Plaintiff previously filed a *substantially similar* claim in New York City Civil Court, Small Claims Part, *in or around* January 2025. That matter was dismissed, *based on ICN's understanding and internal records*. The claim, which arose from the same factual allegations presented here, was not revived or appealed. That suit *appears to have* arisen from the same facts and claims raised here.

*Id.* at 7–8 (emphases added). This brief description is exceedingly vague and uncorroborated by any public records. ICN Group has failed to carry its "heavy burden" in opposing Kang's chosen forum. *Id.* at 805–06. The Court therefore declines to dismiss Kang's claims for forum non conveniens.

### 3. Misrepresentation Claim

ICN Group lastly argues that Kang's misrepresentation claim fails to meet the specificity requirements of Indiana Trial Rule 9(b) because he does not allege "specific details regarding the alleged fraudulent statements, including who made them, when and where they were made, and how they were communicated." (Dkt. 16 at 7–8). As a preliminary matter, Federal Rule of Civil Procedure 9(b), not Indiana Trial Rule 9(b), applies here. "Under Rule 9(b) of the Federal Rules of Civil Procedure, a party who alleges fraud or mistake 'must state with particularity the circumstances constituting fraud or mistake.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (quoting Fed. R. Civ. P. 9(b)). This means that a plaintiff ordinarily must describe the "who, what, when, where, and how" of the fraud. *Id.* (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). "What constitutes 'particularity' will necessarily differ with the facts of each case . . . [A]lthough plaintiffs are not absolutely required to plead the specific date, place, or time of the fraudulent acts, they still must use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* (citation modified).

Kang specifically alleges the "when"—September 15, 2023—and the "what"—promises of resume revision, several types of fees, legal consultations if needed, emergency hotline support, and a "limited ride provision." (Dkt. 1 at 13). Based on these facts, and mindful of Kang's *pro se* status, the Court finds that Kang has met the particularity requirement of Rule 9(b). Kang's allegations are sufficiently narrow to substantiate his claim of misrepresentation.

ICN Group's Motion not Dismiss is therefore **denied**.

### C. J1X's Motion to Dismiss

Kang's claims against J1X arise from alleged violations of J1X's obligations under Title 22 of the CFR, and from J1X's alleged negligence under Indiana law (Dkt. 1 at 8–9). J1X moves for

14

dismissal for lack of personal jurisdiction and for failure to state a claim. The Court addresses only personal jurisdiction because it is dispositive.

Personal jurisdiction over an out-of-state defendant permitted by the Due Process Clause arises in two forms: general personal jurisdiction, which allows a court "to hear any and all claims against [out-of-state defendants] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)), and specific personal jurisdiction, which is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

The Complaint does not allege that J1X has any offices, employees, or property in Indiana, so there is no basis for general jurisdiction. To establish specific personal jurisdiction in the forum state, the defendant must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Int'l Shoe*, 326 U.S. at 316). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Spokane Kart Racing Ass'n v. Am. Kart Track Promoters Ass'n, Inc.*, 206 N.E.3d 462, 467 (Ind. Ct. App. 2023) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The United States Supreme Court set the standard for lower courts' analyses of the minimum contacts test in *Burger King Corp. v. Rudzewicz*, 471 U.S. at 472. In that case, the Court held that "critical to due process analysis" is "foreseeability," specifically whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). An "individual's contract with an out-of-state party alone can[not] automatically

15

establish sufficient minimum contacts in the other party's home forum," *id.* at 478, but a lack of physical contacts with a state cannot defeat personal jurisdiction "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State." *Id.* at 476. The Supreme Court also instructed lower courts to evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479. Contacts that are "'random,' 'fortuitous,' or 'attenuated'" are insufficient to establish a forum state's jurisdiction over a defendant. *Id.* at 475 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299).

Here, J1X does not submit any evidence opposing the implementation of specific personal jurisdiction, but the Complaint fails to make a prima facie case. The Complaint does not allege that J1X has any presence in Indiana, that it participated in any negotiations in Indiana, or ever came to Indiana. J1X's only alleged links to Indiana are the DS-7002 that POSCO (an Indiana company) also signed; and a single email that J1X sent to Kang while working at POSCO. These two acts are not enough to create sufficient minimum contacts with Indiana.

Likewise, J1X's alleged regulatory obligations do not establish sufficient minimum contacts. J1X was not required to go to Indiana to fulfill its regulatory obligations, and J1X did not allegedly go to, or direct any actions toward, Indiana related to those obligations. *See, e.g.*, *Hotmix & Bituminous Equipment Inc. v. Hardrock Equipment Corp.*, 719 N.E.2d 824, 828 (Ind. Ct. App. 1999) (finding no personal jurisdiction where defendant was "not generally engaged in business in Indiana, its agents did not come to Indiana to offer or negotiate an agreement, and its contacts with Indiana consisted solely of interstate mailings and telephone calls"); *Prolific, LLC v. Freedom Central Holdings, Inc.*, No. 21-cv-2725, 2022 U.S. Dist. LEXIS 125494, at *1 (S.D. Ind. July 14,

16

2022) (finding no personal jurisdiction over defendant that had no offices, employees, bank accounts, or real estate in Indiana, never sold goods or services in Indiana, never had employees enter Indiana for business purposes, and where "all the important aspects of the parties' relationship occurred" outside Indiana").

The Court therefore **grants** J1X's Motion to Dismiss for lack of personal jurisdiction. Typically, when the Court finds personal jurisdiction lacking, it evaluates whether transfer is appropriate under 28 U.S.C. § 1631. *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023) (""[W]hen federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case."). J1X does not address the transfer or dismissal without prejudice[1] is appropriate, and J1X's Motion does not offer information that would suggest a proper forum. Regardless, Kang will be given an opportunity to amend his complaint and establish personal jurisdiction. The Court therefore does not presently decide whether to transfer or dismiss Kang's claims against JIX. If, however, Kang does not file an amended complaint, or if the amended complaint again fails to establish personal jurisdiction over J1X, then the Court will afford Kang and J1X an opportunity to brief the issue and decide which resolution is proper.

## IV.   CONCLUSION

For the reasons explained above, the Court **DENIES** ICN Group's Motion to Dismiss (Dkt. 16), and the claims against ICN Group for breach of contract and misrepresentation have survived the initial hurdle of a motion to dismiss, and may proceed.

The Court **GRANTS in part and DENIES in part** POSCO's Motion to Dismiss (Dkt. 17). The motion is **granted** as to Kang's claims against POSCO for breach of contract based on the DS-

---

[1] A dismissal for lack of personal jurisdiction is necessarily without prejudice. *See, e.g.*, *Lauderdale-El v. Ind. Parole Bd.*, 35 F.4th 572, 576–77 (7th Cir. 2022).

7002; breach of implied duty of good faith and fair dealing; and fraudulent inducement are **dismissed without prejudice**.[2] The motion is **denied** as to Kang's claims against POSCO under Title VII and for breach of the Offer Letter; and these claims may proceed.

The Court **GRANTS** J1X's Motion to Dismiss for lack of personal jurisdiction (Dkt. 24), and the claims against J1X will either be dismissed without prejudice or transferred.

Kang is granted leave of **twenty-one (21) days** from the date of this Order to file an amended complaint, if such filing would not be futile. If nothing is filed by that date, then the dismissal of the claims against POSCO for breach of contract based on the DS-7002, breach of implied duty, and fraudulent inducement will be converted to a dismissal with prejudice, and this matter will proceed only as to the following claims: Kang's claims against POSCO under Title VII and for breach of the Offer Letter; and his claims against ICN Group for breach of contract and misrepresentation.

If an amended complaint is filed, then all Defendants shall have **fourteen (14) days** from the date of the amended complaint to file their responses, if any.

If no amended complaint is filed, then within **fourteen (14) days** from the date an amended complaint was due: POSCO and ICN Group shall file their answers to the surviving claims in the original Complaint; and J1X and Kang shall file position statements of no more than **ten (10) pages** as to whether the claims against J1X should be dismissed without prejudice or transferred.

 **SO ORDERED**.

Date:   3/17/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

[2] "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [his] complaint . . . [unless] amendment would be futile or otherwise unwarranted." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519, 520 (7th Cir. 2015).

Distribution:

DONGHO KANG
36, sanghak-ro, buk-gu, APT 206-503
Busan
Republic of Korea

Jonathan Lawrence Bucher, Jr.
SCHULTZ & POGUE, LLP
jbucher@schultzpoguelaw.com

Allison Hawkins
Burr & Forman LLP
ahawkins@burr.com

Ingu Hwang
Burr & Forman LLP
ihwang@burr.com

Kevin Lichtenberger
Schultz & Pogue, LLP
klichtenberger@schultzpoguelaw.com